UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 1:99-cr-00059-LEW |
| | ) |
| RYAN JAMES CURRIER, | ) |
| | ) |
| Defendant. | ) |

**ORDER REVOKING CONDITIONAL
DISCHARGE 18 U.S.C. § 4243(g)**

The matter is before the Court on the Government's Motion to Revoke Order of Conditional Release (ECF No. 67). In a previous order, I determined that Ryan James Currier committed violations of the Court's Order of Conditional Release dated September 16, 2022 (ECF No. 66) and ordered a forensic evaluation to address whether his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another. Order Regarding Revocation of Conditional Discharge (ECF No. 79). As a consequence, Currier is presently in the custody of the Attorney General, hospitalized in a Bureau of Prisons facility pursuant to 18 U.S.C. § 4243. After careful consideration of expert reports and the testimony and argument presented at hearing, Currier's conditional release is revoked.

**BACKGROUND**

While detained in county jail in August of 1999, Ryan James Currier was diagnosed with bipolar disorder. During his time in jail, Currier mailed over 40 letters to government officials, the media, and others, which were threatening and obscene. As a result, Currier

was charged with mailing threatening communications. In October of 1999, following his arrest, Currier was diagnosed with schizoaffective disorder and the opinion was offered that he was unable to appreciate the nature and wrongfulness of his threatening behavior.

In January of 2000, following a jury-waived trial, the Court rendered a special verdict of not guilty only by reason of insanity pursuant to 18 U.S.C. 4242(b)(3). Thereafter, pursuant to 18 U.S.C. 4243(a), the Court ordered Currier committed to a suitable facility until he was eligible for release pursuant to 18 U.S.C. 4243(e). Shortly after, according to an annual update provided to the Court, mental health staff at the facility reported that they did not believe Currier met the criteria for either bipolar disorder or schizoaffective disorder, but the diagnoses were maintained based on his history. The primary diagnosis was noted to be borderline personality disorder, though Currier was also diagnosed with antisocial personality disorder, alcohol dependence, cannabis dependence, cocaine abuse, and paraphilia NOS.

In April of 2000, Currier was conditionally released (ECF No. 21) pursuant to 18 U.S.C. 4243(f). On release, Currier began drinking alcohol and became non-compliant with his psychiatric medication. He was hospitalized after expressing suicidal and violent thoughts and was diagnosed with bipolar disorder and alcohol dependence. In February of 2001, Currier's conditional release was revoked (ECF No. 26) pursuant to 18 U.S.C. 4243(g). At this time, Currier was diagnosed with borderline personality disorder, antisocial personality disorder, schizoaffective disorder versus bipolar disorder (in remission), alcohol dependence, cannabis dependence, cocaine abuse, and paraphilia NOS. In January of 2002, Currier was again conditionally discharged. (ECF No. 29).

In June of 2002, the Government filed an ex parte motion requesting that the Court issue an arrest warrant based on Currier's failure to comply with the prescribed regimen of care and treatment. (ECF No. 30). A warrant issued pursuant to 18 U.S.C. 4243(g). Currier thereafter entered state custody on new state criminal charges, specifically, kidnapping and threatening with a weapon. While incarcerated, Currier was again diagnosed with bipolar II disorder.

Upon Currier's discharge from state custody, almost fifteen years later, he was temporarily detained by federal authorities pursuant to the June 2002 arrest warrant. In April of 2017, Currier appeared before the Court and voluntarily agreed to be remanded to the custody of the Attorney General for placement in a suitable facility. (ECF No. 48.)

In April of 2022, the Warden at FMC Devens, the facility where Currier was placed, provided the Court with a Panel Risk Assessment (ECF No. 61) that delivered the opinion that Currier's conditional release under a prescribed regimen of intensive supervision and psychiatric care, along with enforced compliance with medications would no longer create a substantial risk of bodily injury to another or serious damage to the property of another and recommended Currier's release on certain conditions. The panel found that Currier's primary diagnoses are bipolar I disorder, borderline and antisocial personality disorders, alcohol and cannabis use disorders (in a controlled environment), fetishistic disorder, and other specified paraphilic disorder.

In August of 2022, the Court found that the Currier had recovered from his mental disease or defect such that his conditional release would no longer create a substantial risk to public safety in light of both his recovery and his ongoing treatment regime. 18 U.S.C.

4243(f). The Court ordered Currier conditionally discharged from the care and custody of the Attorney General subject to manifold conditions. (ECF Nos. 65 & 66).

In October of 2022, Senior U.S. Probation Officer Barker notified the Government that the Currier had committed several violations of his conditions of release. (ECF No. 67, Exhibit 1). Officer Barker identified violations by Currier that included watching "forced porn"; using the search terms rape, young girl, boy, forced, incest, and virgins in Internet search applications; watching videos resulting from such searches; lying to Officer Barker about utilizing restricted search terms; downloading and installing several file deletion and wiping applications in violation of the computer and internet monitoring program; and leaving his residence without approval in violation of the home confinement program. Based on these violations, the Government filed an Ex Parte Motion for Arrest Warrant for Failure to Comply with Prescribed Regimen of Medical Psychiatric or Psychological Care or Treatment and for a Hearing to Determine Whether Ryan James Currier Should be Remanded to a Suitable Facility Pursuant to 18 U.S.C. 4243(g). (ECF No. 67). An arrest warrant was issued on October 17, 2022. (ECF No. 68).

I conducted a § 4243(g) motion hearing on October 28, 2022, to determine whether the order of conditional release should be revoked on the Government's motion. Tr. of Hr'g at 3 (ECF No. 91). At the hearing, Officer Barker testified to the aforementioned violations. In addition, he testified that upon execution of the arrest warrant he discovered a fixed blade knife hidden behind Currier's dresser as well as an unapproved, "smart" television. *Id.* at 6. He further testified that a forensic examination of Currier's cellular phone revealed that Currier had searched for the name and work address of a female

provider of his clinical care at the Maine State Prison. *Id.* at 8. Based on Officer Barker's testimony, I found that Currier violated the conditions of his conditional release and that the conditions were material to Currier's adherence to a prescribed regimen of care. *Id.* at 40-41. I also advised counsel that I would issue an order for a forensic evaluation to assist in the task of assessing risk to the community and that Currier would in the meantime remain in the custody of the Attorney General. *Id.* at 41-42. The order issued that day. Order Regarding Revocation of Conditional Discharge (ECF No. 79). More specifically, I ordered the U.S. Bureau of Prisons to conduct a psychiatric or psychological examination of Currier pursuant to 18 U.S.C. 4243(g) and 4247(b) to determine whether, in light of the violations of the prescribed regimen of care, Currier's continued release would pose a substantial risk of bodily injury to another person or serious damage to property of another, and recommending that he be examined at FMC-Devens.

On February 27, 2023, the Bureau presented the Court with the Forensic Evaluation prepared by a FMC Devens Forensic Psychologist and countersigned FMC Devens's Chief Psychologist (ECF No. 81). The evaluation includes a detailed overview of Currier's mental health. Currier's primary diagnosis was determined to be antisocial personality disorder, borderline personality disorder, sexual sadism disorder (in a controlled environment), other specified paraphilic disorder, alcohol use disorder (in remission, in a controlled environment), and cannabis use disorder (in remission, in a controlled environment). The Evaluation concludes with the opinion that Currier continues to present a substantial risk of bodily injury to another person, but that the risk he poses is not the product of a mental disease or defect. Thus:

5

> Mr. Currier's present elevated risk of violence stems primarily from personality pathology, paraphilic disorders, and propensity for substance use. However, personality disorders are not typically construed as a mental disease or defect, as severe mental illness can involve sudden changes in a person's presentation and awareness, whereas personality pathology is viewed [as] a persistent, pervasive, and a long-tern psychological way of functioning across different contexts. As a result, it is of the opinion of this writer that while Mr. Currier does pose a substantial risk of bodily injury to another person, he does not currently suffer from a mental disease or defect that would satisfactorily meet the requirement for commitment under title 18, United States Code, Section 4243.

Forensic Eval. at 18. The Bureau's evaluation, in effect, proposes that Currier be released from the purgatory of 18 U.S.C. § 4243 because, as a technical matter, he does not suffer from a mental disease or defect. In other words, the Bureau's response throws a curve ball into the proceedings.

As a subsequent telephonic hearing, conducted on March 9, 2023, the Government moved for an additional psychiatric examination (ECF No. 84). I granted the motion over Currier's objection. (ECF No. 85). On May 19, 2023, the Government filed a supplemental psychiatric report prepared by a licensed psychologist (ECF No. 88-1). The author of the report opines that the diagnosis of borderline/antisocial personality disorder and fetish disorder, in combination with a substance use disorder, best fits Currier's clinical picture, and these conditions (rather than schizoaffective disorder or bipolar disorder) give rise to Currier's problematic behavior. Report at 4. In effect, the supplemental report harmonizes with the Bureau's evaluation, though it does not speak to the propriety of committing a person based on a personality disorder.

A further hearing was held on July 14, 2023, to provide the government and Currier an opportunity to question a representative of the Fort Devens psychiatric team. To provide

some guidance, I issued a docket order explaining that, because I had already determined that Currier violated his conditions of release, I would assign the burden of proof to Currier to show that his continued release would not create a substantial risk to the public. Order (ECF No. 94). The parties also stipulated to certain facts consistent with the foregoing background. Joint Stipulations (ECF No. 98).

At the hearing, FMC Devens Chief Psyhologist Diana Hamilton, Psy.D., testified. In summary, and paraphrasing her testimony in terms of my understanding of its import, Dr. Hamilton explained that although personality disorders are routinely treated in clinical settings, including in offender programs provided to general population inmates, personality disorders are more or less intractable, lifelong conditions that are seldom amenable to the kind of clinical treatment the Bureau provides to individuals involuntarily hospitalized based on a finding of not guilty by reason of insanity. Because the Bureau's methodologies for restoring a committed individual's sanity for purposes of 18 U.S.C. § 4243 is not likely to remove or significantly alleviate risks associated with a personality disorder, and because risks associated with a personality disorder are commonplace when it comes to incarcerated prisoners whom the Bureau releases from custody on a regular basis, Dr. Hamilton suggested that the repeated hospitalization of Currier under § 4243 based on a personality disorder is inconsistent with the focus of § 4243. In that regard, I understand Dr. Hamilton to be saying that the repeated hospitalization of someone like Currier is not in keeping with the statute's authorization to hospitalize an individual based on the existence of a "mental disease or defect" or its corresponding anticipation that a

person involuntarily hospitalized for reason of insanity might be treated to the point of "recovery." *See* 18 U.S.C. § 4243(f).[1]

## DISCUSSION

Congress passed the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241-4248, in the wake of the acquittal of John Hinckley for the attempted assassinated on President Ronald Reagan. *Shannon v. United States*, 512 U.S. 573, 577 (1994). In addition to formally codifying the "not guilty by reason of insanity" defense and establishing procedures to ensure a defendant's mental competency to stand trial, Congress created a "general federal civil commitment procedure … to ensure that an insanity acquittee would receive proper care and treatment." *Id.* at 575.

As the foregoing background relates, Mr. Currier was swept up into the Bureau of Prison's hospitalization program more than 20 years ago, after authoring threatening and obscence letters and mailing them to members of the government and media. Since his initial hospitalization he has been repeatedly released on conditions. None of those releases has proven successful. Indeed, following his second release on conditions, Currier kidnapped a female victim and threatened her with a weapon. Currier's conduct was serious enough to earn roughly fifteen years of incarceration in state prison. Upon his release he reentered the federal Bureau of Prison's hospitalization program. There he

---

[1] This incongruence between the generalized array of treatment options available to those civilly committed as opposed to the more tailored treatment to those suffering from personality disorders or other diagnoses not characterized as "mental disease or defect" available to general population prisoners is concerning. In light of the conclusion reached by several circuits, discussed below, that district courts are not restricted to the medical definition of "mental disease or defect" the BOP may wish to consider a policy change so that all those in its care and custody receive the most effective treatment practical. Dr. Hamilton's testimony reinforces my conclusion that despite this complicated intersection of mental health treatment, statutory law, and case law, the BOP continues to do its best.

remained for five years before the Bureau petitioned for his release on conditions, pursuant to 18 U.S.C. § 4243(f). I ordered his release on conditions, based on the Bureau's showing, but within weeks Currier was back before me on the pending motion to revoke based on his violation of certain conditions. Currier's violations directly reinforce a finding that he presents a substantial risk of sexual predation.

> Title 18 U.S.C. 4243(g) states the following:
>
> (g) Revocation of conditional discharge.--The director of a medical facility responsible for administering a regimen imposed on an acquitted person conditionally discharged under subsection (f) shall notify the Attorney General and the court having jurisdiction over the person of any failure of the person to comply with the regimen. Upon such notice, or upon other probable cause to believe that the person has failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, the person may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. The court shall, after a hearing, determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another.

By its terms, subsection (g) does not require a finding of the existence of a mental disease or defect, let alone a mental disease or defect on par with an "insanity" finding.

In the preliminary stage of my review of the pending motion, I concluded that Currier violated the conditions of his release (ECF No. 79). The remaining question under subsection (g) is whether in light of his failure to comply with conditions, Currier's continued release would create a substantial risk of bodily injury to another person or serious damage to property of another. Or so it would seem. Making an unexpected splash in the revocation proceedings is the BOP's disquieting revelation 20 some years after Currier was initially committed, that Currier "does not currently suffer from a mental

Case 1:99-cr-00059-LEW   Document 101   Filed 08/18/23   Page 10 of 13   PageID #: 216

disease or defect that would satisfactorily meet the requirement for commitment." Eval. at 18.

Neither the report nor the otherwise illuminating testimony of Dr. Hamilton provided an explanation for the fresh diagnosis, unearthed for the first time during the revocation proceeding. The BOP agrees that Currier poses a substantial risk of bodily injury to another person, but assigns that risk to a suite of personality disorders, which apparently is not considered a "mental disease or defect," at least as that term is understood by mental health professionals relying on the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders. Although the issue of whether Currier suffers from a mental disease or defect is not directly at issue in a revocation proceeding under section 4243(g), it is foundational to the propriety of his committement under the statute more broadly. The BOP has raised this, albeit in unorthodox fashion, as an impediment to Currier's continued commitment regardless of my consideration of the statutory elements of the revocation proceeding.

On the strength of the undisputed evidence, I find that Currier's continued release would pose a substantial risk of bodily injury to another person in light of his failure to comply with conditions. Dr. Hamilton's opinion on this score was robust and in league with the author of the report that liberated Currier of his previously diagnosed mental diseases and defects. That Currier poses a substantial risk of bodily injury to another was not a contested point at any time during these proceedings and for good reason. Currier's conduct both recent and distant leads ineluctably to the conclusion that he presents a substantial risk, a conclusion supported by plain powers of observation, in addition to the

assistance provided by exptertise in the field of psychoanalysis. I further find that this substantial risk of bodily injury to another is manifestly tethered to Currier's revised constellation of abnormal conditions of the mind, including his manifestly dangerous personality disorders. These disorders substantially affect his mental and emotional processes and substantially impair his behavior controls, which in turn create a clear and immediate risk of bodily injury to others. I conclude that this finding is sufficient to justify Currier's continued hospitalization.

      The First Circuit has yet to address the distinguishing qualities and requirements for a finding of mental disease or defect. However, several circuits that have visited the issue have observed that the term "mental disease or defect" is not defined in the statute and that district courts are not limited to a medical professional's understanding of that term. Those circuits also hold that continued confinement can be based on a dangerous personality disorder. Most recently, the Eleventh Circuit held that the undefined term "mental disease or defect" encompasses "any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls." *United States v. McIntosh*, 900 F.3d 1301, 1308 (11th Cir. 2018) (quoting *McDonald v. United States*, 312 F.2d 847, 851 (D.C. Cir. 1962)). The *McIntosh* Court found no difficulty in the proposition that a personality disorder could constitute a mental disease or defect for purposes of hospitalization under section 4243, citing supportive authority from sister circuits. *Id.* at 1309 (citing *United States v. Beatty*, 642 F.3d 514, 516 (6th Cir. 2011); *United States v. Williams*, 299 F.3d 673, 678 (8th Cir. 2002); *United States v. Bilyk*, 949 F.2d 259, 261 (8th Cir. 1991); *United States v. Murdoch*, 98 F.3d 472, 476 (9th Cir. 1996)).

The Supreme Court has also intimated that the term "mental disease or defect" can encompass dangerous mental illnesses, without elaboration. *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992) (explaining that "the acquittee may be held as long as he is both mentally ill and dangerous, but no longer"); *Jones v. United States*, 463 U.S. 354, 369 (1983) (acquittee's "confinement rests on his continuing illness and dangerousness").

The Supreme Court has held that an insanity acquittee need not be released once his hospitalization exceeds in duration any sentence he might have received had he been convicted of the underlying federal offense. *Jones*, 463 U.S. at 362-63, 368-69. Furthermore, Congress has itself set up a regime in which prolonged commitment turns exclusively on the coexistence of significant mental illness and dangerousness.[2] And finally, the Court has afforded Mr. Currier not only fastidious due process but also has given him the keys to his release repeatedly, so he may ratify the wisdom of the BOP's episodic recommendations and demonstrate that he is capable of being unburdened both from hospitalization and ongoing conditions of release. Mr. Currier has on such occasions, and most emphatically on the occasion before the Court, failed in an alarming manner.

---

[2] While the pending motion is concerned with a section 4243 proceeding, it should be noted that Congress has elsewhere authorized the civil commitment of "sexually dangerous" persons, including persons simply "in the custody of the Bureau of Prisons." 18 U.S.C. § 4248(a). That provision authorizes commitment following a hearing based on a finding "by clear and convincing evidence that the person is a sexually dangerous person," *id.* § 4248(d), but only authorizes subsequent release after the director of the facility determines that the person "is no longer sexually dangerous to others" or will not be if subject to a prescribed regimen of care, *id.* § 4243(e). Release would then be authorized on a finding based on a preponderance of the evidence that the person will not be sexually dangerous or will not be sexually dangerous if released under a prescribed regimen of care. *Id.* § 4248(e). On the current record, I could not make such a finding.

## CONCLUSION

The Government's Motion to Revoke Order of Conditional Release (ECF No. 67) is GRANTED. Ryan James Currier will remain in the custody of the Attorney General for placement in a suitable facility on the grounds that, in light of his failure to comply with the prescribed regimen of medical, psychiatric and psychological care and treatment, his continued release would create a substantial risk of bodily injury to another person. Ryan James Currier will remain in the custody of the Attorney General until such time as the State of Maine will assume responsibility for his care or he is eligible for release pursuant to 18 U.S.C. 4243(f).

S<small>O</small> O<small>RDERED</small>.

Dated this 18th day of August, 2023

/s/ Lance E. Walker<br>United States District Judge